STUCKEY v. ATLANTIC COAST LINE R. R. CO.

1. PLEADINGS—NEGLIGENCE—RAILROADS—EVIDENCE.—WARNING to conductor of negligence in coupling cars some days before accident, is proper allegation as to negligence in action for damages therefrom, and proof thereof properly admitted.

2. DAMAGES—LORD CAMPBELL'S ACT.—SUFFERING of injured person deceased and of beneficiaries occasioned by witnessing sufferings of deceased relative, is not an element of damages, under Lord Campbell's act.

3 CHARGE—EVIDENCE.—ERROR in excluding evidence is rendered harmless by explicit instructions to jury in charge not to consider that view in making up the verdict.

4. DAMAGES — LORD CAMPBELL'S ACT — NEGLIGENCE — SUFFERING — GRIEF.—Case of *Nohrden* v. *R. R.,* 59 S. C., 87, holding that jury may consider the wounded feelings and grief of beneficiaries if they produce an injury, in estimating damages under Lord Campbell's act, affirmed.

Before TOWNSEND, J., Sumter, March term, 1900. Affirmed.

Action for damages for personal injuries by A. Brooks Stuckey, as administrator of Sarah P. Dixon, against Atlantic Coast Line Railroad Co. The following is so much of the charge as is pertinent to the questions made:

"The statute under which this suit is brought reads as follows: 'Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, and the act, neglect or default is such as would, if the death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person or corporation who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony.' And the second section is: 'Every such action shall be for the benefit of the wife, husband, parent and children of the person whose death shall have been so caused; and if there be none such, then for the benefit of the heirs at law or distributees of the person whose death shall have been so caused as may be dependent for a support, and shall be brought by or in the name of the executor or administrator of such person. And in every such action, the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties, respectively, for whom and for whose benefit such action shall be brought; and the amount so recovered shall be divided among the before-mentioned parties in such shares as they would have been entitled to if the deceased had died intestate and the amount recovered had been personal assets of his or her estate.' Notice the words now, 'Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover

damages in respect thereof.'  If you come to the conclusion
that the death of the lady named in the complaint did not
result from any negligent act of the railroad company, then
that would settle the matter at once.   In all avocations of
life certain duties devolve upon us, no matter what they are;
there is no vocation in life in which human beings move
where we are completely relieved from responsibility, if they
have any connection, relations or business transactions with
their fellow-men.   So there are certain duties devolving
upon the railroad company and certain duties devolving
upon those who travel on the railroad company's trains.
Proper care must be used, also, in transacting any business,
and proper care is such as a prudent person would observe
in doing the same thing.   There is a good definition here in
two of the requests to charge, one of which is, 'Negligence
is the absence of due care.'   It is the duty of every one, I
said, to observe that care which an ordinarily prudent per-
son would do, in doing the same thing; that is, proper care,
and if that care is not observed, that is negligence.   'Negli-
gence is the absence of due care.'   Another definition; 'neg-
ligence is defined to be the failure to do what a reasonable
and prudent person would ordinarily have done in a certain
situation, or doing what an ordinary prudent person would
not have done.'   That is the charge here, that by the negli-
gence of the railroad company, this lady was injured so
that she died.   I shall take up the requests to charge and
discuss them and I will have more to say to you in connec-
tion with them.   I think usually the defendant's requests
come first and the plaintiff's last.

"The defendant requests me to charge you this: * * *
"The third is in relation to the feelings; wounded feelings,
first clause.   'If you find that the plaintiff is entitled to
recover, your verdict will be for such an amount as will com-
pensate those entitled thereto in proportion to the injuries
received by the death of Mrs. Dixon.'   Second clause.  'You
cannot take into consideration, in the estimation of damages
in this case, the wounded feelings of the beneficiaries, their

distress or grief. That is not what the law intends by the injuries, nor can you give damages for the sorrow they may feel for the loss of their mother; you are not to go into speculation over these matters, but are to form a deliberate and candid judgment from the facts as proven.' I cannot charge you that. The first part of it contains the general law as I understand it, 'If you find that the plaintiff is entitled to recover, your verdict will be for such an amount as will compensate those entitled thereto, in proportion to the injuries received by the death of Mrs. Dixon;' but I cannot charge you 'that you are not to take into consideration the wounded feelings and sorrows,' etc. I charge you that you may consider the grief and sorrow, provided you find that such produces an injury, because the statute says that such damages may be given as is proportioned to the injury which resulted from that sorrow; so then you may consider that in arriving at your verdict.

"Fourth. 'The jury cannot consider as an element of damage the grief which has been suffered on account of the death of Mrs. Dixon by the persons for whose benefit the action is brought.' I take that to be the same—I don't see any difference; I cannot charge it as it is. I charge you, you may take it into consideration, if you find there was grief and it produced an injury.

"Fifth. 'No matter how much Mrs. Dixon, the deceased, may have suffered from the time of the alleged injury to the time of her death, this is not a proper element of damage, and the jury cannot take that into consideration in making up its verdict.' I charge you that, no matter how much she suffered, you cannot consider her suffering as a part in making up your verdict as to damages.

"Sixth. 'In an action of this kind, if the jury comes to the conclusion that the plaintiff should recover at all, it cannot give damages to punish the railroad company for its carelessness or recklessness, even should the jury conclude that the railroad company was careless or reckless.' I understand that to be punitive damages, and I charge you that

proposition, understanding it to mean punitive damages.    I will explain : if I should injure your horse ten dollars' worth, that would be actual damage, and if you sue me to get ten dollars, that would be actual damages; if I did it in a malicious manner, then that would subject you to punitive damages —that is, punishing damages; but in a case like this, you cannot give punishing damages, you can give compensatory damages; provided you find there is liability for damages at all, you may give compensatory damages, but not punishing damages.

"Seventh. 'The statutes allowing one to sue for damages in an action of this kind limits the action to the recovery of such damages as are by way of recompense or compensation for injuries sustained by Mrs. Dixon's death; and while it does not limit the damage to the pecuniary loss alone of the beneficiaries, and while the jury may give such damages as they may think proportionate to the injury, yet they can give only such damages as will be proportionate to the injury and compensate for injury actually sustained by Mrs. Dixon's death, and they must be established by the evidence in the case.'    I charge you that.

"Eighth. I charge you this.    'The jury cannot take as an element of damage the grief suffered by the children of Mrs. Dixon or any of them occasioned by witnessing her suffering.'    I charge you that.

"The plaintiff's requests to charge are as follows : * * *

"4th. 'The measure of damage is not the pecuniary loss alone of the beneficiaries, if they are entitled to damages at all; but the jury may give such damages as they may think proportionate to the injury, whether pecuniary or otherwise, sustained by the beneficiaries; for it is obvious that such injury may be far beyond any mere pecuniary loss.'    I charge you that.

"5. 'The jury in determining what amount, if any, will be proportionate to the injury resulting to the beneficiaries from the death of their relative, are not confined to the consideration of pecuniary loss alone sustained, but may and

16—60

should consider any other injury, whatever may be its character, in ascertaining the proportion contemplated by the statute.' I charge you that.

"6th. 'The plaintiff does not ask nor is the jury authorized to give punitive, exemplary or vindictive damages, as a punishment to the railroad company, or as an example of the danger attending wrong doing, but may give such damages as they may think proportioned to the injury resulting from such death to the parties, if they believe from the evidence that the deceased was negligently killed by the defendant.' I charge you that, as I have charged you previously.

"7th. 'Carriers of passengers for hire are required to give the highest degree of care and are responsible for the smallest negligence.' I charge you that; and I will say in connection there, that it means the highest degree of care under the circumstances, and in considering that matter you must consider what kind of conveyance, whether a passenger train, a mixed train or a freight train. If a passenger voluntarily goes upon the train, then, while it is the duty of the railroad company to observe the highest care, it means the highest care under the circumstances, and you must take into consideration, in that connection, whether it is a passenger train, mixed train or freight train."

From judgment on verdict in favor of plaintiff, defendant appeals on following exceptions:

"I. Because his Honor, Judge Buchanan, erred in refusing to grant an order to strike out the fifth paragraph of the complaint, it being submitted as error, that the alleged acts of negligence on previous occasions to that out of which it is alleged the injury grew, could not be offered in evidence in support of the negligence of the defendant at the time of the injury, and that the same could not be pleaded or proven; and also committed error in holding that paragraph 5 of the complaint was in effect an allegation that the defendant with 'knowledge or information sufficient to put them on notice, and inform them of the disqualification and incompetence of

the servants, continued them in their employment,' there being no allegation that the injury to Mrs. Dixon was caused by reason of the incompetency of the defendant's servants in charge of the train.

"II. Because his Honor, Judge D. A. Townsend, erred in allowing so much of the testimony of W. R. Law as follows, to be submitted to the jury, namely: 'Q. What was the effect, so far as you saw, that day, the effect of the jar on you? A. I do not know that I would have felt it so sensibly, but I was right sick—feeling very badly—I had just gotten out of bed the day before; but it jarred me pretty badly, jarred the back of my neck. I was leaning on the seat, and that is one reason I felt it.' It being respectfully submitted that such testimony had no relation to the alleged act of negligence from which the injury complained of in the complaint grew, and did not even tend to support the view of Judge Buchanan, that paragraph 5 of the complaint charges the defendant with retaining negligent servants in its employment.

"III. Because his Honor, Judge Townsend, erred as a matter of law in holding in reference to such testimony of W. R. Law, that he could not express an opinion on this evidence, for the reason that it had been passed upon by the order of Judge Buchanan and he could not rule upon it, and in holding that it was *res judicata,* so far as he was concerned, and in holding that, inasmuch as Judge Buchanan had ruled upon the question, he was to say, 'That the testimony which is necessary to come in is relevant;' and in holding, 'I simply say that I have to rule this testimony in because I do not think that it is a question for me,' for it was the duty of his Honor, Judge Townsend, not only to construe the pleading but to pass upon every question as to its pertinency and relevancy, and particularly upon the pertinency and relevancy of the question and answer above referred to; and he erred as a matter of law in holding that he had no power to consider the question.

"IV. Because his Honor, Judge Townsend, erred in al-

lowing the following questions, put to the witness, B. A. Pressly, to be asked and answered: Q. 'Have you ever ridden on the train from here to Bishopville? A. Yes, sir. Q. You remember having been on that train any time during the year 1898? A. Yes, sir. Q. You remember if you were ever on that train at any time when there was any jar or shock produced by a collision of the cars? A. I was at Elliott's and, the weather being very warm, I was standing in the rear door of the coach, and they came back with such force that they came very near knocking me out, and it ran thirty or forty yards before it stopped. Q. Elliott's is a station on this road? A. Yes, sir. Q. And this was done while coupling the cars together? A. Yes, sir. Q. Did you ever speak to any of the railroad officers about this violent coupling at Elliott's? A. I spoke to Capt. Welch, and told him he ought to caution Mr. Collins to be more careful, that when they came back to couple to the passenger coach there might be an accident;' it being error it is respectfully submitted to allow these questions to be asked and answered concerning the alleged negligent acts of the defendant on a different occasion from the time of the alleged act of negligence complained of in the complaint, and upon which this action is brought, and the same is not relevant.

"V. Because it is respectfully submitted there was error on the part of his Honor, Judge Townsend, in admitting the following questions to be asked of the witness, R. E. Carnes, and in allowing him to answer same, namely: Q. 'Were you ever on the train when there was any violent coupling? A. Yes, sir. Q. Were you ever on the train and saw a violent coupling? If so, please tell what the result of it was. A. Yes, sir, on many occasions.' Because the alleged acts of negligence formed no part of the plaintiff's cause of action, the question before the Court being as to whether the defendant was guilty of negligence, at the time of the alleged injury to Mrs. Dixon, and did not even tend to support the view of Judge Buchanan that paragraph 5 of the complaint charges

the defendant with retaining negligent servants in its employment.

"VI. Because his Honor, Judge Townsend, erred in admitting the following questions to be asked of Mrs. A. R. Kelly, and in permitting her to answer same, over defendant's objection, namely: Q. 'Did your mother suffer much or little during her illness? A. She suffered a great deal; I do not think there ever was greater suffering than she suffered. Q. Was that suffering of any consequence to you— Q. (Mr. Fraser): Was the suffering of your mother of any consequence to you? A. Yes, sir, I suffered a great deal from it. Q. Has the death of your mother been of any consequence to you? A. Yes, sir. Q. Could any amount of money be full compensation to you? A. No, sir, never could be compensated.' In that the suffering of Mrs. Dixon formed no part of the cause of action of the plaintiff.

"VII. (a.) Because his Honor erred in refusing to charge the second clause of the third request presented by the defendant, as follows: 'You cannot take into consideration, in the estimation of damages in this case, the wounded feelings of the beneficiaries, their distress or grief. That is not what the law intends by the injuries, nor can you give damages for the sorrow they may feel for the loss of their mother. You are not to go into speculation over these matters, but are to form a deliberate and candid judgment from the facts as proven;' in that the wounded feelings of the beneficiaries, their distress, sorrow or grief, which they may have felt or may feel for the loss of their mother, Mrs. Sarah P. Dixon, are not proper elements of damage in an action of this kind, and apart from physical injury, cannot form a basis upon which to give damages. (b.) Because his Honor erred in charging, in relation to the said second clause of the third request, above recited, as follows, namely: 'I cannot charge you that. * * * But I cannot charge you that you are not to take into consideration the wounded feelings and sorrow, etc. I charge you that you may consider the grief and sorrow, provided you find that such produced

an injury, because the statute says that such damages may be given as are proportioned to the injury which resulted from that sorrow; so, then, you may consider that in arriving at your verdict;' in that the statute does not provide for the giving of damages for sorrow, nor for injury to wounded feelings, nor for sorrow and grief, and his Honor should have so instructed the jury, and should have instructed the jury that no such damages could be given in this case—there being no allegation or evidence of physical injury, there was nothing on which to base his charge that they could consider grief and sorrow, if they found that such produced an injury.

"VIII. Because his Honor erred in refusing to charge the fourth request of the defendant, namely: 'The jury cannot consider as an element of damage the grief which has been suffered on account of the death of Mrs. Dixon to the persons for whose benefit the action has been brought,' and erred in charging in relation thereto, 'I take that to be the same—I cannot see any difference. I cannot charge it as it is. I charge you, you may take it into consideration if you find there was grief and it produced an injury;' in that the grief which the beneficiaries may have suffered is of too vague, uncertain and shadowy a character of itself to form the basis of an injury, apart from physical or bodily injury, and there was no allegation in the complaint that any such bodily or physical injury was suffered by the beneficiaries, and no proof whatever that they suffered any such injury, and there was nothing upon which to base the charge to the jury that they could give damages for the grief of the beneficiaries; and, in the absence of any allegation or proof that the beneficiaries suffered any bodily injury, his Honor's charge to the jury, 'if you find there was grief and it produced an injury,' led the jury to believe that they could give damages for grief alone, and led them to believe that the whole matter was in their discretion, without any rule of law in regard to the same.

"IX. Because his Honor erred in instructing the jury, at

the request of the plaintiff, as follows: 'The jury in determining what amount, if any, will be proportionate to the injury resulting to the beneficiaries from the death of their relative, are not confined to the consideration of pecuniary loss alone sustained, but may and should consider any other injury, whatever may be its character, in ascertaining the proportion contemplated by the statute;' inasmuch as such charge unexplained, under the facts of the case, was calculated to lead the jury to believe that they could give damages for the wounded feelings of the beneficiaries, since his Honor had charged in relation to the defendant's third request, before that time, in the following language: 'The third is in relation to the feelings—wounded feelings,' and had charged the jury that they might give damages for same, if they found that it produced an injury, without explaining what kind of injuries were contemplated by the statute; it being respectfully submitted that it was the duty of the Court to construe the law, and not leave the same to be interpreted by the jury, in its discretion.

"X. Because his Honor, Judge Townsend, erred as a matter of law in refusing to set aside the verdict and grant a new trial, in that: I. His Honor permitted the testimony of Mrs. A. R. Kelly, which is set out in the grounds of motion for a new trial, to be submitted to the jury over the defendant's objection; and allowed the jury to consider from her testimony the alleged suffering of Mrs. Dixon as an element of damage in the behalf of Mrs. Kelly and the other beneficiaries, when the same formed no part of the elements of damage in the case. 2. His Honor erred in refusing to sustain the exceptions made to his charge, set out in the grounds of motion for a new trial, in the record herein, reference to which is here made, on said motion, and particularly so much of his charge as instructed the jury that they could give damages for distress, sorrow, grief and wounded feelings of the beneficiaries; all of which was called to his attention on said motion, and he should have granted a new trial

on said exceptions, there being no evidence whatever to support any of said alleged elements of damage."

*Messrs. J. T. Barron* and *Purdy & Reynolds,* for appellant, cite: *Paragraph V. of the complaint should have been stricken out:* 18 S. C., 473; 27 S. C., 456. *Mental suffering in beneficiary in consequence of witnessing suffering of deceased parent, not an element of damages:* 57 S. C., 325; 29 S. C., 317. *Damages as a solace of the wounded feelings of the beneficiaries and for loss and companionship of deceased, not recoverable:* 18 Q. B., 93; 33 Ark., 350; 18 Ill., 349; 48 Ill., 410; 75 Ill., 468; 80 Ill., 88; 19 Kan., 83; 24 Md., 84; 59 Mich., 257; 44 Minn., 5; 16 S. W. R., 924; 52 N. W. R., 840; 14 N. Y., 310; 29 N. Y., 252; 1 N. Y. Supp., 334; 29 Barb., 234; 32 Barb., 27; 30 N. J. L., 188; 28 O. St., 191; 29 Fed. R., 72; 33 Penn. St., 318; 66 Penn., 393; 57 *Id.,* 335; 84 *Id.,* 419; 48 Tex., 372; 20 S. W. R., 80; 27 Pac. R., 688; 21 Wis., 372; 28 *Id.,* 522; 38 Vt., 294; 18 Ia., 280; 47 N. J. L., 28. *The contrary view:* 14 Ind., 595; 26 *Id.,* 477; 127 *Id.,* 545; 93 *Id.,* 530; 57 Cal., 20; 95 Cal., 510. *As to meaning of the word "pecuniary:"* 29 N. Y., 252; 52 Ill., 290; 69 Ill., 426; 47 N. J. L., 28; 20 S. W. R., 80; 84 Mich., 539; 51 Wis., 599; 43 Ill., 338; 45 Ill., 811; 26 L. R. I., 289. *Damages cannot be recovered as a solatium:* 89 N. Y., 24; 37 Ohio St., 372; 125 Ind., 176; 24 P. R., 796; 34 Fed. R., 510.

*Messrs. Frasers & Cooper* and *Thos. S. Moorman,* contra, cite: *As to alleging other accidents:* 2 Ency. P. & P., 112; 27 S. C., 456; 19 S. C., 26; 4 Rich., 338; 32 S. C., 129; 52 S. C., 328; 58 S. C., 70; 13 Am. R., 57; 11 Am. & Eng. R. R. Ca., 168; 16 Pet., 360; 107 U. S., 524; 91 U. S., 470; 36 S. C., 263; 48 S. C., 266. *As to sufferings of deceased:* 53 S. C., 71; 38 S. C., 33; 28 S. C., 454; 32 S. C., 149; 18 S. C., 113; 50 S. C., 136; 5 Wall., 105. *Are wounded feelings elements of damages?* 53 S. C., 458; 8 Ency., 2d ed., 661; 13 Ency., 1st ed., 445; 137 Mass., 137; 11 Allen, 73;

3 Strob., 464; 2 N. & McC., 269; 1 McC., 207; 19 S. C., 66; 57 S. C., 398.

April 8, 1901.   The opinion of the Court was delivered by Mr. CHIEF JUSTICE McIVER.   This action was brought by the plaintiff and administrator of Sarah P. Dixon, deceased, against the Atlantic Coast Line Railroad Company of South Carolina, to recover damages for the alleged negligent killing of his intestate by the defendant company, for the benefit of the children of the deceased, under the provisions of an act, usually designated as "Lord Campbell" act, incoporated as sections 2315-2318 of the Revised Statutes of 1893.   It appears from the "Case" that a motion was made before his Honor, Judge Buchanan, by the defendant company to strike out paragraph V. of the complaint, upon the ground that the allegations therein contained were irrelevant to the case as made by the complaint.   This motion was refused, which was duly excepted to by defendant company, and notice of intention to appeal therefrom upon the rendition of the final judgment.   Subsequently thereto the defendant company filed its answer, in which, "protesting against being required to join issue upon allegations contained in paragraph V. thereof [the complaint] and reserving the right to object to all testimony relating thereto, it denies the truth of the allegations contained in said paragrapth V. thereof."   The case came on for trial before his Honor, Judge Townsend, and a jury, and a verdict having been rendered in favor of the plaintiff, the defendant moved for a new trial on the minutes, which was refused; and defendant gave notice of intention to appeal from the judgment entered upon the verdict, as well as from the order of Judge Buchanan, above referred to, and the order of Judge Townsend refusing the motion for a new trial upon the minutes, upon the exceptions set out in the record—which, together with the charge of the Circuit Judge, should be reported with this case.

These exceptions substantially raise the following ques-

tions: 1st. Whether there was error on the part of Judge
Buchanan in refusing the motion to strike out paragraph V.
of the complaint.    2d.  Whether there was error on the part
of Judge Townsend in his ruling as to the admissibility of
certain testimony.    3d.  Whether there was error in the
charge to the jury either of omission or commission.

For a proper understanding of the first question, it will be
necessary to set out paragraph V. of the complaint, as well
as to state the nature of the case as made by the complaint.
So much of the allegations of the complaint as are pertinent
to this immediate inquiry may be substantially stated
as follows: That on the 1st of October, 1898, plain-
tiff's intestate purchased a ticket from Sumter to
Bell's Crossing, and boarded the defendant's train at Sum-
ter as a passenger, to be carried to Bell's Crossing; that when
the train reached Bishopville, a railroad station between the
city of Sumter and Bell's Crossing, the forward portion of
the train attached to the engine was separated from the pas-
senger coach, in which intestate was seated, and the same
was left standing on the main track, while the other portion
of the train to which the engine was attached, was moved off
to a side track; and that when the engine was brought back
on the main track for the purpose of being coupled to the
passenger coach, it was run back so rapidly and with such
great force and violence as to throw the intestate upon the
floor of the coach, whereby she sustained serious bodily in-
juries, which resulted in her death on the 6th day of Novem-
ber, 1898.    Paragraph V. of the complaint reads as follows:
"That plaintiff is informed and believes that from time to
time, for ten days before the said collision at Bishopville on
the said 1st day of October, 1898, a portion of said train to
which the engine was attached had been, negligently and
without due regard to the lives and safety of the passengers
on said train, run against that portion of said train to which
the passenger coach was attached, and the conductor of said
train of cars had been warned by a passenger on said train,
on or about the 21st day of September, 1898, that unless

more care was taken by his engineer in striking the said two portions of said train together, some passenger would be seriously injured. That nothwithstanding said warning, the portion of the train to which the engine was attached was run against the portion of the train to which the passenger coach was attached on the said 1st day of October, 1898, as above referred to." It seems to us that these allegations were not irrelevant to the case as made by the complaint; for if true, they tended to show that the very thing which it was alleged caused the injury complained of in this case had been called to the attention of the conductor but a few days before, as dangerous; and that notwithstanding such warning, a few days afterwards the disaster complained of did occur from the very same cause which the conductor had been warned was likely to produce such a result. We do not think that there was any error on the part of Judge Buchanan in refusing the motion to strike out the fifth paragraph of the complaint, for irrelevancy. The first exception is overruled.

Proceeding then to the second general question, as to errors in the ruling as to the competency of testimony—the second, third, fourth and fifth exceptions are based upon objections to the testimony of the witnesses, W. R. Law, B. A. Pressley and R. E. Carnes, who were offered to sustain the allegations of paragraph V. of the complaint; and what we have already said, in considering the first exception, is sufficient to dispose of these exceptions. For if the allegations in that paragraph are pertinent to the issues, then, of course, any testimony (otherwise competent) tending to sustain such allegations would be competent—that is to say, could not be held to be irrelevant. We may add, however, in reference to the third exception, that even if the Circuit Judge did give an unsound reason for his ruling (as to which we need not inquire), that would not affect the question; for, as has been frequently held, the question for this Court is whether the ruling of judgment appealed from is right, and not whether the reasons given for such ruling or judgment

·are sound. And as to the fifth exception, we may add that when it was developed that the testimony of the witness, Carnes, as to violent shocks in coupling cars, did not relate to occurrences within the ten days mentioned in the fifth paragraph of the complaint, that portion of his testimony was ruled out. Exceptions two, three, four and five are overruled.

The sixth exception imputes error in allowing the witness, Mrs. Kelly, a daughter of the deceased, to testify as to the suffering her mother endured by reason of the injures she received, and the effect of such suffering upon the witness, upon the ground "that the suffering of Mrs. Dixon formed no part of the cause of action of the plaintiff."

While it is true that the Circuit Judge did, in the first instance, overrule this objection, yet such error (assuming it to have been an error) was rendered absolutely harmless by the positive instruction given to the jury, that they could not consider as an element of the damages in this case, either the sufferings of the deceased, or the grief of the beneficiaries, or any one of them, occasioned by witnessing such sufferings. For the Circuit Judge expressly charged defendant's fifth request, which was as follows: "No matter how much Mrs. Dixon, the deceased, may have suffered from the time of the alleged injury to the time of her death, this is not a proper element of damage, and the jury cannot take that into consideration in making up its verdict." And he emphasized this instruction by adding the following words: "I charge you that, no matter how much she suffered, you cannot consider her suffering as a part in making up your verdict as to damages." And he also charged defendant's eighth request in these words: "The jury cannot take as an element of damage the grief suffered by the children of Mrs. Dixon, or any of them, occasioned by witnessing her suffering." So that even conceding that there was error in the ruling as to the admissibility of the testimony of Mrs. Kelly, such error was rendered entirely harmless by these explicit instructions to the jury.

Exceptions seven, eight and nine will be considered together, as they all impute error to the Circuit Judge—to use the language of counsel for appellant in his argument here— "in refusing to charge the jury that they could not take into consideration the wounded feelings of the beneficiaries, their grief and sorrow, and in charging them that the jury might take them into consideration, if they found that there was grief and that it produced an injury." It seems to us that the question presented by these exceptions has been conclusively settled by the views presented in the case of *Nohrden* v. *Northeastern Railroad Co.,* 59 S. C. Rep., 87. But counsel for appellant has, according to the proper practice, asked and obtained leave to review that case; and we have thus had the benefit of a full and elaborate discussion of this question, on both sides, to which we have listened with much interest. We must say, however, that we see no reason for departing from the view taken in Nohrden's case, based as it is on the express terms of our own statute, as construed in the previous case of Petrie, Strother and the other cases cited in the case of Nohrden, which carried to their logical result the views presented in the preceding cases; and we do not deem it at all necessary to go over the argument again. Exceptions seven, eight and nine are overruled.

The tenth exception, which imputes error to the Circuit Judge in refusing the motion for a new trial on the minutes, is disposed of by what has already been said, and must, therefore, be overruled.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.